# United States District Court
### Eastern District of North Carolina
### Western Division

Case No. 5:18-CT-3090

(To be filled out by Clerk's Office only)

**FILED**

APR 2 6 2018

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

Marlon Goodwin

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

Inmate Number 0575452

-against-

C. Taylor, Prison Health Service; or Chief Med. Officer Doe, Nurse Jones

Mr. Watson, C. Coley, T. Jones, C/o Wilson, C/o Tigert, Mr. Casino,

Chief ADA Coordinator Doe, Lanesboro Facility ADA Coordinator Doe, Nurse

Doe, Jeline Bennette, Verdeen Benjamin, Keith Lassiter, Chief Med.Off. Doe #2

*(In the space above enter the full name(s) of the defendant(s). If you cannot
fit the names of all of the defendants in the space provided, please write
"see attached" in the space above and attach an additional sheet of paper
with the full list of names. The names listed in the above caption must be
identical to those contained in Section IV. Do not include addresses here.)*

# COMPLAINT

*(Pro Se Prisoner)*

**Jury Demand?**

☐ Yes

☐ No

---

## NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from
public access to electronic court files. Under this rule, papers filed with the court should *not*
contain: an individual's full social security number or full birth date; the full name of a person
known to be a minor; or a complete financial account number. A filing may include *only*: the last
four digits of a social security number; the year of an individual's birth; a minor's initials; and
the last four digits of a financial account number.

---

Case 5:18-ct-03090-D    Document 1    Filed 04/26/18    Page 1 of 34

## I.     COMPLAINT

*Indicate below the federal legal basis for your claim, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).*

☑   42 U.S.C. § 1983 (state, county, or municipal defendants)

☐   Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)

☐   Action under Federal Tort Claims Act (United States is the proper defendant; must have presented claim in writing to the appropriate Federal agency and received a notice of final denial of the claim pursuant to 28 U.S.C. § 2401(b))

## II.    PLAINTIFF INFORMATION

Marlon Goodwin
Name

057 5452
Prisoner ID #

Lanesboro Correctional Facility
Place of Detention

P.O. Box 280
Institutional Address

Polkton                  North Carolina            28135
City                            State                          Zip Code

## III.   PRISONER STATUS

*Indicate whether you are a prisoner or other confined person as follows:*

☐   Pretrial detainee   ☐ State   ☐ Federal
☐   Civilly committed detainee
☐   Immigration detainee
☑   Convicted and sentenced state prisoner
☐   Convicted and sentenced federal prisoner

## IV.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could result in the delay or prevention of service. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1:    *Mrs Carolee Coley*
Name

*Program Supervisor at Maury Correction & ADA Coordinator*
Current Job Title

*2568 Moore Rouse Rd.*
Current Work Address

*Hookerton*          *North Caroline*     *28538*
City                          State                      Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☑ Both


Defendant 2:    *Mr. Tim Jones*
Name

*Programs Director & ADA Coordinator at Maury Correctional*
Current Job Title

*2568 Moore Rouse Rd.*
Current Work Address

*Hookerton*          *North Carolina*     *28538*
City                          State                      Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☑ Both

## Defendant(s) Continued

Defendant 3: _Lateef  Wilson_
Name

_Correctional  Transportation  Officer_
Current Job Title

_2568  Moore  Rouse  Rd_
Current Work Address

_Maokerton            North  Carolina          28538_
City                              State                        Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☑ Both


Defendant 4: _Correctional  Officer  Tigert_
Name

_Transportation  Officer_
Current Job Title

_2568  Moore  Rouse  Rd_
Current Work Address

_Maokerton            North  Carolina          28538_
City                              State                        Zip Code

Capacity in which being sued: ☒ Individual ☐ Official ☑ Both

Defendant 5. Mr. K. Watson
Correctional Adminostrator at Maury Correctional
2568 Moore Rouse Rd.
Hookerton N.C. 28538
Sued in both Capacities

Defendant 6. Medical Adminostrator Casino
Supervisor of Medical Services at Maury Correctional
2568 Moore Rouse Rd.
Hookerton NC 28538
Sued in Individual Capacity & Official Capacity

Defendant 7. Prison Health Services Chief Medical Officer Doe 1
Provider of Medical Services to inmates incarcerated in the N.C.
Dep't of Corrections Director over all Medical Care
831 West Morgan Str.
Raleigh N.C.
Both Capacities

Defendant 8. Lead Nurse R. Jones or Nurse Doe.
Supervisor of Nursing at Bertie Co Correctional
218 Cooper Hill Rd
Windsor N.C 27983
Individual Capacity

Defendant 9. Chief Medical Officer Doe 2
Supervisor of Med. Dep't. at Bertie Co Correctional
218 Cooper Hill Road
Windsor N.C. 27983
Individual Capacity

DEFENDANT 10. Chief Medical Officer ~~Jane~~ and or Jeline Bennette
Supervisor and Medical Administrator at Lanesboro Correctional
552 Prison Camp Rd.
Polkton N.C 28135
both Capacities


Defendant 11. Nurse Doe
Nurse at Lanesboro Correctional Facility provides medical care
552 Prison Camp Rd.
Polkton N.C. 28135
Individual Capacity


Defendant 12. Catherine Taylor
Programs and Services Supervisor / Administrator and Facility Head at
Bertie County Correctional enforces prison's policy & procedure
218 Cooper Hill Rd
Windsor N.C. 27983
Sued in Individual Capacity. & Official Capacity

Defendant 13 Defendant J. Doe or John Doe
ADA Coordinator at Lanesboro Correctional Facility
552 Prison Camp Rd
Polkton N.C. 28135
both Capacities

Defendant #14. Chief ADA Coordinator and Division Coordinator Doe
Supervisor of Coordinating and Carrying out policies and
procedures on disability accomodation for the D.A.C
831 West Morgan Street
Raleigh North Carolina 27603
both capacities

Defendant 15. Verdeen Benjamin
Responsible for conducting disciplinary hearings for inmates who have
broken rules at Maury Correctional
831 West Morgan Street
Raleigh N.C. 27603
both Capacities

Defendant #16. Kenneth Lassiter
Director of Prisons Responsible for disciplinary appeals, administr-
ative remedy's appeals; the enforcement, implementing and/or creation
of all D.A.C policies and procedures as well as Supervision, trai-
ning of all the defendants
831 West Morgan Street
Raleigh N.C. 27603
both Capacities

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: *Bertie Correctional Facility, Maury Correctional and Lanesboro Correctional Facilities*

Date(s) of occurrence: *2-16-15 through the Present*

State which of your federal constitutional or federal statutory rights have been violated:

*1st, 4th, 8th, 14th, and the Federal Disability statutes 42 U.S.C § 12101 et seq. and 29 U.S.C § 794. (Federal ADA and section 504 of the Rehabilitation Act).*

*State here briefly the FACTS that support your case. Describe how each defendant was personally involved in the alleged wrongful actions, state whether you were physically injured as a result of those actions, and if so, state your injury and what medical attention was provided to you.*

FACTS:

> On or about 9-23-15 I was diagnosed with Myasthenia Gravis a rare Auto Immune Neuro-Muscular Disease that causes debilitating fatigue and Muscular Weaknesses to all of my body's voluntary Muscles, and impairments to my vision, fingers, hands, arm, legs, breathing, shoulders, gait, mobility, speech, rest, chewing, swallowing and Mental impairments. While at Maury Correctional Facility In 2016 - November of 2017 I made numerous requests for ADA accomodations to Defendents Coley, Jones and Division ADA Coordinator Doe to be placed on medically unfit gain time because prior to my arrival at Maury, I was at Bertie Correctional and had a prison Job as a Barber and the only reasons I was sent to Maury was because of my medical needs, disabilities and impairments, defendents Coley, T. Jones and ADA Director Doe didn't grant my requests although I had a disability and all other inmates at Maury who had disabilities were either given Jobs and/or placed on medically unfit gain time and as a result of this and by reasons of my disabilities I am serving a longer prison sentence than I would serve, if I weren't disabled and had stayed at Bertie Correctional and worked my Barber Job!
>
> From July of 2016 - September of 2017 while at Maury I made numerous ADA requests to defendents Coley, T. Jones and ADA Director Doe for personal Aids in

<div style="border:1px solid">Who did what to you?</div>

the form of a wheelchair, orderly, note writer a shower chair, hand held shower head, shoes and modifications to the prison's meds, meals, religous and recreational services time schedules so that I could have access to them. The defendants either misplaced, ignored and or denied these ADA requests although other inmates with mobility, visual, gait, stand walking and fingers, arms, speech impairments were given wheelchairs and orderlies to help all them to get around the facility and to clean their cells, write letters, and bathe, my rare disabilities made it so I could not adhere to the prison's set schedules of meds, meals, rec and religous services and as to where I face injury everytime I attempt to bathe because all the heat from shower steam flares up the symptoms of Myasthenia Gravis as to where that I stand the chance of becoming unable to stand in the shower and slipping because all of the fatigue and debilitating muscular weakness that can occur at anytime. And a orderly could've assisted me with bathing and my daily chores of cleaning my cell which I must do because I am immuno suppressed and proper hygiene and a very clean and sterile living quaters and enviroment minimizes my chances of catching germs and infections or becoming ill. The wheelchair or other mobility Aides would've also minimized the chances of while attempting to attend a program and services of not bumping into things other inmates and or objects it's very common for someone with Myasthenia Gravis symptoms to bump into persons or objects and bumping into a prisoner with the propensity for violence would be highly danger for me because I stand the chance to be easily injured as a result of me having Myasthenia Gravis. As a result of my requests being denied and or my disability I was unable to properly clense myself to the point I had a goatish musty order that other inmates and gaurds humiliated me about and when I did bathe I had to sit on the shower floor and caught fungel infections. and with no mobility Aides I was unable to participate in DAC services of meals, meds, and recreation I would have to chose between using my energy to walk and get my critical medications that suppressed my over-active immune system and or going to get a nutritous meal to prevent hunger pangs and a upset stomachs that were caused by missing previous meals and the critical medications that I was prescribed which had to be taken w/ meals on days that I made it to both meds and meal services, I would have to sacrifice and forgo recreational and religous activities and services. due to me using up My energy on walking to med and

Case 5:18-ct-03090-D    Document 1    Filed 04/26/18    Page 9 of 34

meal services on days that I missed med times due to fluctuation of myasthenic symptoms the symptoms would over fluctuate b/c I didn't have the proper amount or low levels of immuno suppressant drugs in my body and this would most likely make all or any of the DAC services, programs and activities unavailable to me because I'd be without energy and bed ridden. W/o the orderly I was unable to properly bathe and clean my cell and the conditions of my cell became hazardous, it smelled rancid of must mold grew from the toilet, insects and ants and drain flies migrated to my cell because of the unclean and unsanitary conditions and dirty clothes, whill inmates and staff derided and humiliated me about the uncleaniness of my cell and on the days that I attempted to clean my cell I would trip over objects on my floor hitting my head and would burn energy that was needed to me to use when going to med, meals and or recreational services, being denied these accomodations along with the Myasthenia Gravis diagnosis was very stressful and depressing to me.

I also requested of the defendants Coley, T. Jones; ADA Director Doe to place me in a safe facility with no wax on the floor and the services of a Professional Barber b/c Myasthenia Gravis causes blurred double vision and a unsteady gait/walk and I risked the chance of slipping and falling when walking on wax due to those impairments and there being wax everywhere at this facility it presented obstacles in me getting to any and all programs, services, and activities offered by the D.A.C. as well as placing me in peril of injury. Fearing injury I would limit going to most of the services, programs and activities offered and when I did go I had to walk with extreme caution out of fear of slipping, falling and bumping into someone and injuring myself because I also bruise and bleed very easily as a side effect from the medications I take at such times when I was in fear of injury this would exacerbate the Myasthenic symptoms because Emotional upset and distress triggers a immuno response causing the symptoms to fluctuate the defendents denials of this ADA Requests rendered programs and services and activities unavailable to me. The requests for a professional barber was also denied although I needed access to one because I bruise and bleed very very easily as well as can very easily catch an infection and most or all the inmate barbers were not trained or licensed to adhere

to the State of North Carolina's haircutting sanitation regulations, as well as not trained to properly adjust the shavers and or hairclipper so that they will not cut someone or me in the facial or scalp areas out of fear of being subjected to infection through the use of filthy and contaminated clippers being used on my head, scalp and face by an inexperienced inmate barber, I had to furgo the DAC Haircutting Programs and services even though I needed the access to this program and service because Auto-immune disorders and Co occuring Graves Thyroid Disease causing hairloss, and when I didn't get a haircut out of fear of injury and infection my hair would grow in patches and staff and inmates alike would deride me and humiliate me calling me names like 'George Jefferson, Vulture man turtle head Mr Patchy" because of the bald spots on my scalp, at such times I would retreat to my cell and be ashamed to come out of it, and when I did chose to get a haircut the inmate barber were heavy handed and ended up nicking and cutting my scalp and my scalp and head would bruise up and break out in bumps and rashes from the dirty clippers and shavers on my highly sensitive skin. Even though I was not wholly ~~pretected~~ Procluded from participating in this service/program I had to participate with knowledge and the chance of knowing that I was at risk of incurring serious each time that I attempted to get a haircut or to take advantage of this service.

Defendants Coley, T. Jones, ADA Director Doe and Medical Administrator Casino, Chief Medical officer Bennette and ADA Facility Coordinator John Doe all discriminated against me by denying my ADA Requests for a professional barber at both the Maury Correctional Facilities and the Lanesboro Correctional Facility either by ignoring, misplacing and or denying this requests for accomodations, as a result I could not recieve the benefits of this service and if I did recieve the benefits of haircutting services it was only provided under painful and pain staking circumstances of me recieving cuts, bruises and rashes and or skin infections which made me want to not take advantage of this service as a whole.

From August of 2017 through April of 2018 I presented and made multiple ADA Requests for accomodations to Defendants Coley; T. Jones; Casino, Defendant Doe, at Maury Correctional Facility and ADA Coordinator J. Doe and Defendant Bennette and Nurse Doe at Lanesboro Correctional Facility

in my requests I sought the proper access to the D.A.C court access Programs and services so that I could communicate with the Courts and North Carolina Prisoners' Legal Services which was the D.A.C court Access Program and or services. So that I could litigate criminal and civil matters.

The First claim that I wanted to pursue was a challenge to my criminal convictions based on the issues and facts that my trial Counsel Duane Bryant was ineffective for failing to present exculpatory forensic evidence and a confession made by a key states witness that he committed the crimes for which I was convicted and that the lead investigator over my criminal case had investigated this case under a conflict of interest because the detective's cousin was one of the actual shooters and by him being related to a possible suspect in my case per his Agency's policy, protocol and procedure this detective should have recused himself from the case but did not thereby violating his Agency's policies and procedures, and thereafter rushing to Judgment and charging me with the crimes without first giving any attention to the forensic evidence in my case and the statements of the key states witness which both corroborate one another amounting to a confession that this key state witness and the detective's relative committed the crimes thus exculpating me. I wanted to collaterally attack my convictions using this exculpatory evidence as well as to show that my trial Counsel failed to investigate and present this evidence at my trial, which would have swung the Jury in my favor.

The second claim was a civil matter against Defendants Lead Nurse Jones, C. Taylor, J. Bennette Casino and Nurse Doe and Chief Medical Officer Doe 1. for being deliberately indifferent and there deliberate indifference started on or about 2-08-15 when I first began to experience the symptoms of the Myasthenia Gravis which included blurred double vision, headaches, debilitating fatigue and muscular On 2-16-15 I was examined by Bertie County Correctional Facility's Primary Health Care provider Physicians' Assistant Peter Woglom (P.A. Woglom) after this examination P.A Woglom was unable to diagnose the symptoms and thereafter ordered a course of treatment for a Urgent Consult with a Opthelmologist but lower level med. staff under the supervision and or training of Defendants Nurse Jones, Taylor and C.M.O Doe 1 did not carry out P.A. Woglom's orders of Opthalmology Consult,

lower level medical staff overruled P.A. Woglom's order without even examining me and/or giving any justification for doing; but on 2-18-15 made an invalid and misleading entry into my medical records that I had went to the Opthalmology consult, defendants failed to supervise. staff.

On 3-23-15, I was taken to see Doctor Shertzinger a prison Optometrist and after he was unable to diagnos the symptoms which had now progressed to not only debilitating fatigue and musculer weakness in my eyes and eye lids it had now spreaded to weakness in my mouth, Jaws, neck as to where I couldn't swallow, chew and slurred my speech. Dr. Shertzinger then ordered for me to consult with a Opthalmologist, and Lower level medical staff under the defendants' supervision and training overruled Dr. Shertzinger's orders without even conducting an examination of me and/or without justification.

On or about 4-09-15, I was again taken to see another Prison Optometrist and this Optometrist could not diagnos the symptoms that I was experiencing and he ordered that I needed to be taken to consult with a Opthalmologist, but lower level medical staff overruled this Optometrists' orders as well without proper justification and/or conducting an examination of me.

On or about 5-12-15 the symptoms had progressed to the point as to where I had no energy whatsoever and I could not stand, walk, speak, clearly, move my eyes, I had trouble eating and clothing myself, I was bedridden on on this date I fainted twice and fell in the shower.

I was then taken to Vidant Health's Emergency Dep't. Dr. Threlkeld was the physician on duty and after running a battery of test she made a determination that my thyroid disease had flared up and that I was suffering from Hypomagnesmia or low magnesium and the weakness was labeled Asthenia. Dr. Threlkeld then wrote in a Order that was sent back to Bertie prison facility with me that I would need to see an eye specialist. and prescribed me Magnesium Oxide which I was to take for 14 days as well as other meds Beta Blocker which would later be dangerous to the Myasthenic Symptom. When I arrived back at the prison Lower level medical staff overruled Dr. Threlkeld's orders by prescribing me the Magnesium Oxide for 6 months and failed to carryout the order

with an eye specialist without even examining me or without any medical justification, the referred eye specialist would have been most likely a Opthalmologist.

On or about 5-26-15, I was taken to Consult with Dr. Perkins an Endocrinologist with Physicians East, Dr. Perkins chose a course of treatment for my thyroid disease and eyes as to where I was to be prescribed prednisone a cortico steroid that is commonly used to treat patients with Myasthenia Gravis because it suppresses the immune system and helps the patient to regain their energy and muscle's strength and Beta Blockers, although Dr. Perkins believed that the symptoms were caused by my thyroid disease (Graves Disease) she was not aware of the undiagnosed medical condition of Myasthenia Gravis but yet chose a therapy that was none to restore muscle strength.

When I left Dr. Perkins Office I was given a copy of her orders which was consistent with prison's routine policy and procedure and also consistent with prison's routine policy and procedure once I arrived back at the prison, Dr. Perkins orders were reviewed by lower level medical staff and consistent with the defendants Nurse Jones, C. Taylor and C.M.O Doe 1 informal policy of failure to supervise and train lower level medical staff and their policies of not ensuring that med staff was adequately trained to carry out treating physician orders, and that the medical orders of the treating physicians were reasonably followed and that they were transmitted, and that medical care be provided in a timely manner, Consistent with these policies and/or customs lower level medical staff failed to carry out Dr. Perkins orders, medical staff did not conduct an examination of me or refer me to see a doctor before deciding that I would not recieve the prescribed medication prednisone therapy.

On or about 7-5-15, the symptoms had gotten so bad that it was unbearable that I could not stand, move or open my eyes I had headaches throughout the day and severe shortness of breath, I then decided to write a grievance Complaining about the symptom, inadequate medical care and delay in getting me to a eye specialist and or Opthalmologist, per prison policy when a inmate files a grievance, the grievance staff calls the matter to the attention of those individuals responsible for the matter that the grievance Concerns.

Defendant Nurse Jones and or C. Taylor and or C.M.O. Doe 1 is responsible for medical care generally and for arranging for timely specialized care outside the prison(s), as well as for ensuring that their subordinates adhere to state law and or prison's policies, regulations, procedures and protocols while providing medical care, the law required that lower level medical staff couldn't over rule a doctor's decisions.

None of the Defendants provided me any remedies or relief from the decisions made by their subordinates, but they all held that I refused an X-Ray back in March 25th 2015 which was the reason why I had not been taken to see the Opthalmologist and or eye specialist and in order to see the eye specialist I would have to submit a sick call and start the whole process over again, the defendants did not address the overruling of the Orders of P.A. Woglom, Dr. Shertzinger, the other prison Optometrist, Dr. Threlkeld and Perkins order or the fact that there were 2 X-Rays in my medical file and the fact that when I declared a medical emergency and was taken to the Emergency Room on 5-12-15 that actually started the sick process over again consistent with policy.

Defendants have a informal policy of giving low priority and attention to inmate's grievances complaints that have merit and a custom of blaming the inmates for the medical staff's misconduct and shortcomings.

Finally On or about 9-22-15 I was taken to see the Opthalmologist Dr Huynh, and Larsen at U.N.C Hospitals where I was diagnosed as having severe Myasthenia Gravis a Neuro-Muscular Auto Immune Disease, these doctors couldn't believe how bad of shape that I was in and how far the disease had progressed and they immediately decided to send me to the E.R at UNC.

When I got to the E.R. Dr. Anderson a Neurologist was on duty and he immediately discontinued the Beta Blockers and the magnesium Oxide medications because they were known to exacerbate the myasthenic Symptoms.

I January of 2016 I had to be hospitalized for 23 days to have a plasma exchange to reverse the Symptoms progressions, to near fatal levels.

Defendants Nurse Jones, C. Taylor and C.M.O Doe #1 has been placed on notice of the negligent and or failures of lower level medical staff and or their subordinates to carry out doctors' orders and or prescribed therapies by a number of complaints, grievances over many month and years, but have failed to take any corrective and disciplinary action against them, defendants also knew of the informal ones but did nothing.

Defendants Nurse Jones, C. Taylor and C.M.O. Doe #1 knew about my medical condition and the risks to my health by reviewing my grievances, calls from my family, and by the prison's routine and established practices or policies of the Medical Administrators to review all Referral Forms that accompany an inmate to a outside the prison doctors' appoinment / consultation to ensure that the inmate recieved appropriate medical treatment, care and follow up treatment; defendants reviewed all of the orders from the doctors and P.A. Woglom who all order for the Opthalmology consult which was consistent with policy and procedure and the established practice.

The defendants took no actions to ensure that I recieve timely medical care and was taken to the ordered Consult with a Opthalmologist and that their deliberate informal policies were not applied to me.

After I recieved the plasma exchange in January of 2016, Medical staff decided that it would be best if I was housed at Maury Correctional based on my medical diagnosis and conditions. Dr. Wang and Kamara of the Neuro Science team ordered that I come back for a follow up. I was thereafter sent to Maury Correctional where I was taken off gain time

Once at Maury Defendant Casino and C.M.O Doe 2 continued to acquiesce in their informal policies and procedures of allowing lower level medical staff to overrule doctors orders in that the Dietitian Hendren overruled the doctor's orders for me to have a snack bag as to which I needed the snack bag as a therapy to make up for the meal I missed daily due to flunctuations of the Mgasthenic symptoms which cause muscular weakness to the muscles in my Jaws and throat to where I couldn't chew fast enough to adhere to the prison's set schedule of 15 minutes to eat so both P.A. Woglom and Doctor Evans

decided that it would be best for me to eat small frequent meals, and also the snack bag aided in abating the stomach aches that I would recieve from the many different Meds that I was taking at this time around the clock from 7am to 11pm most of which required to be taken with meals or snacks. Dietitian Hendren did this without reviewing my meds, medical records and or examining me or conferring with P.A. Woglom, Dr. Evans or Owens. and as a result I suffered many nights from severe hunger pangs and upset stomachs.

Lower level medical staff failed for 8 months to get me back to the doctor for follow up care at UNC so that I could start a treatment regimen of Prednisone to regain my strength and during this time they failed to refill important medication from 4-29-16 through 6-24-15 I had to go without the prescribed PYRODOSTIGMINE, the only drug at this time that gave me any type of muscle strength and without it I was a vegetable and could do nothing I filed a grievance that put Defendants Casino and CMO Doe 1 on notice but I recieved no relief from their deliberate indifference.

On or about 4-28-17 I was returning from a outside the prison appointment when a known violent and abusive transportation Officer Defendant Wilson assaulted me.

On this date prior to leaving the facility I warned prison staff not to let Defendant Wilson transport me to my doctors appointment because the last time Defendant Wilson had transported me to UNC he would not double lock the handcuffs and as a result they got real tight on my wrist nearly cutting off the circulation this incident occured on or about 4-3-17, and on 4-28-17 I specifically addressed my concerns about Defendant Wilson transporting with Lieutenant Wheeler and C/o Chapman, Lt. Wheeler replied that either Defendant Wilson would transport me to UNC along with Defendant Tigert "I wouldn't go at all". I emphasized to Lt. Wheeler that it would be detrimental to my health and safety for Defendant Wilson to transport me but my concerns were ignored and once Defendant Wilson returned into the facility someone told him that I had tried to complain about

him to Lt. Wheeler, this did not sit well with Defendant Wilson and once inside the transport van he refused to give me crucial medications that I needed to keep my immune system in check. to prevent a unwanted immuno response, he then made sure that I missed my scheduled appointment, and once we got to UNC Defendant Wilson stuck his hands inside my pants groping my genital and when I peacefully protested Defendant Wilson stated "We'll take out a PREA" because he "dont give a fuck". during this time Defendant Tigert did not intervene.

I ended up missing my appointment, and once back inside the van I again requested that Defendant Wilson provide me with my medications and he again refused my request, by this time I was getting weak and could feel a flare up coming on, I was denied access to medical services.

Once we arrived back at the prison facility, I was so weak I could hardly walk and inconsistent with prison's policy and procedure and the established routine and practice, Defendant Wilson took me into a blind spot "labeled the KZ or Kill zone" which is a area within the Maury Correctional Facility's Recieving area where the camera's cant see and inmates get beaten by gaurds there, and disabilities in the use of non-violent techniques are not accomodated by staff to ensure my safety. Once inside this area with no one present but me and Defendant Wilson he gave me a direct order to take my clothes off so that he could perform a strip search. per policy when a inmate returns from an outside the prison appointment a strip search must be done by 2 Correctional Officers and a Supervisor present to ensure that the inmate bodily integrity isn't intruded into and that staff followed policy and procedure while carrying out a strip search.

Once I was naked Defendant Wilson directed me to squat and cough which I complied with. and at all times I remain docile and non belligerant. the scene was secure warranting my safety, to be kept. Defendant Wilson then directed me to stand in front of him and manipulate my penis and thereafter to turn around and show him what I was working, with (referring to my butt), I then became scared because there was no one else in the recieving area.

My boxers were down around my ankles and when I reached down to pull them up

I heard a door open from somewhere in the recieving area, I then told Defendant Wilson that I wasn't a homo or a bitch and I immediately began to yell out for help in the hopes that someone would come to my rescue because I was already severely fatigued and weak

Before I could yell for help again Defendant Wilson acting against prison's policy opened the door to where I was at came into the cell area or KZ and kicked me in my face for no good reasons whatever, because I was docile and the situation hadn't esculated to require force.

Once he kicked me in my face I began to bleed profusedly, he then followed his kick up by pummeling me with his hands and feet knocked me down, and pulled my boxers down to my ankles and thereafter got on top of me while lying me flat and began to grope me about my genitals and butt, and told me that I was "a bitch his bitch", choked me and twisted my arm. By this time I began to experience a myasthenic episode that was exacerbated by Defendant Wilson refusing to give me my meds, causing me to become emotionally upset, and attacking me, laying me flat which in itself is a don't do to patients with myasthenia Gravis, then choking me while my mouth was bleeding profusedly and the muscles in my throat were weak as to where I could not swallow the blood at this time I began to cough up the blood in order to prevent from drowning in it, I also believe that I felt Defendant Wilson's arousel and erect penis on my person.

The Blood went onto both me and Defendant Wilson who was still lying on top of me choking me. I then began to plead with Defendant Wilson for him to please stop choking me and in response he told me to "shut the fuck up". Planting his fist in my mouth, this is not the proper handling of my disability. Defendant Tigert was present and at no time did he intervene to stop Defendant Wilson blow, kicks and submission holds or the groping of the plaintiffs genitals by Defendant Wilson, and non accomodating me. During these events and prior to them I presented no threat, I was non-belligerant and remained docile, there was no threat to institutional safety and or Defendant Wilson or prison staff during these times as well. Defendant Wilson attacked without warning or any attempts to contact his supervisor to get proper permission to use force nor did he try to deesculate the situation.

After approximately 2 minutes a code 7 (inmate assaulting staff alert) went out and in response Officers from all over the Maury Correctional Prison facility responded to the area of where Me and defendants Wilson and Tigert were, and were of the belief and Implicent bias that I assaulted Defendant Wilson and weren't trained contrarily, these Officers arrived they entered the cell where me and defendants Wilson and Tigert were and assisted Defendant Wilson in choking and kicking me, at no time did Defendant Tigert intervene and or inform these Officers that I didn't assault Defendant Wilson but that Defendant Wilson assaulted me.

There are no policies, procedures, protocols or regulations that moniter prison gaurds in structural and architectural blind spots or outside the prison's fences while in the scope of their duties and watching over inmates, there are no systems and or policies for sending out alerts when inmates are being physically and sexually assaulted and or to alert prison staff immediately of staff misconduct; there are also no policies and procedures to train prison staff Including defendant Wilson and Tigert on crisis intervention so that they are better able to deal with inmate/staff confrontations and or disturbances or to deal with disturbed inmates without using force, this abusive conduct by prison gaurds was prevelant/wide spread and Defendants Watson, Lassiter and Soloman knew of the lack and deficiencies in these policies through the many use of excessive force lawsuits, grievances, complaints and calls from prisoner's families that the Maury Correctional Facility as well as other Correctional Facility under the supervision of Defendants Lassiter and Solomons but yet the defendants failed to take any disciplinary actions against such prison gaurds or otherwise implement inmate safety procedures to control these gaurds actions, at Maury Correctional Defendant Watson knew about the abusive conduct of defendant Wilson as well as his inability to adhere to any of the prison's policies and procedures Defendants knowledge came from grievances, complaints misconduct reports that were filed and made against Defendant Wilson over many months but yet failed to take any actions to discipline Defendant Wilson and or anyother prison staff who behaved analgous to Defendant Wilson's misbehavior or any corrective measure to control these staff's members behavior

During this physical and sexual assault I suffered a busted mouth, loose teeth, lancerations to my face and scalp and numerous bruises and abrasions to my stomach, chest, back, eye, arm, leg,

torso, buttocks, I also suffered humiliation after this assault ended I had on nothing but my underwear and these responding officer under the impliant bias and trained to believe that I was the wrong doer and not Defendant Wilson, made me walk over 250 yards backwards from the recieving area to segregation while during this time my bloodied person dressed in nothing but my underwear was put on display in front of over 100 people. female prison employees and male inmates alike, these thought still linger with me none of the Defendants cared for my well being, my disabilities and limitations and mental and physical health during this use of techniques.

Defendant Wilson has engaged in repeatedly the use of force against inmate and the falsifying of incident and misconduct reports against inmates in the past with no regards for prison policies and procedures, had Defendant Wilson directed me to 'cuff up I would have complied, especially if he believed I had misbehaved, I'm handicapped.

While being forced to walk backwards to segregation Defendant Watson ordered some of his subordinates or gaurds to get the area of where the assault had taken place cleaned up there was blood every and blood splatter and trail throughout the recieving area, when asked by one of the gaurds 'should pictures be taken of the recieving area' Defendant Watson responded "No". This destroyed most of the physical evidence of the assault which would have been useful in a criminal prosecution of Defendant Wilson, my clothes and shoes were outside the cell where this assault had taken place and remained there afterwards, my clothes and shoes had been placed there by Defendant Wilson during the illegal strip search, At no times did any of the defendants accomodate my disability.

As a result of this sexual and physical assault I suffered a flare up and medical episode that lasted for months as to where I had to get an increase in the milligrams and dosages of my medications to regain my strength. My double vision had flared to the point that Dr. Traub order for me to have Prism lenses.

After this assault and on or about 4-29-17 I filed a grievance requesting as a remedy to be allowed to pursue immediate criminal charges against Defendant Wilson, I also complained about the actions of staff in not intervening and or monitoring Defendant Wilson at anytimes. I emphasized that Defendant Wilson was in the wrong and his acts were criminal and I wanted access to the courts to pursue charges my grievances were denied. In may of 2017 I was served with a disciplinary write up in which Defendant Wilson alleged that I threatened to kill him, refused to give him my shoes and that I spit on him, I request video footage that would've shown when I handed him

my shoes, and another statement from Sgt. Monroe who initially said and stated I only attempted to spit on staff members. to show disciplinary hearing staff and use as part of my defense to the charges the fact that there exists a code of silence and that when one staff member breaks prison policy and procedure another staff member will cover for them by making a second statement even if the second statement contradicted the first, Sgt. Monroe made a second statement stating that I spit on Defendant Wilson several times, which was wholly inconsistent with his first statement thus discrediting staff.

I also requested a statement from Defendant Tiger who was present throughout most of the events in his statement Defendant Tiger stated that he only assisted Defendant Wilson in placing me in handcuffs At no time did he ever mention that I spit on Defendant Wilson, refused to hand him my shoe or threatened Defendant Wilson, Defendant Tiger was more closer to the assault the Sgt. Monroe. Defendant Tiger also failed to mentioned what all misconduct he observed no matter whether I or Defendant Wilson was committing the misconduct. It is policy and procedure when writing a incident/misconduct report staff is obliged to report what all misconduct is observed no matter who it's being committed by, this further showed the coordinated cover and staff inability to report misconduct.

Defendant Tiger never reported that Defendant Wilson entered the search cell without the prior permission of his Supervisor and that Defendant Wilson conducted the strip search without the required amount of staff members present, which was inconsistent with prison policy and procedure.

Lieutenant Shields also made a statement in his statement he never mentioned seeing me spit on Defendant Wilson, he also never made any mention of the fact that he was Supervisor of Defendant Wilson and that Defendant Wilson deviated from policy and procedure by not contacting him prior to using force on me or to strip search me which was what prison policy and procedure required, Lt. Shields never reported or mentioned Defendant Wilson's misconduct either.

My defense was to show staff misconduct by failing to report Defendant Wilson's misconduct and the inconsistent reports and observations of staff, as well as that Defendant Wilson was actually engaged in misconduct and was willing to go as far as needed to cover for his misdeeds even if the video footage from outside the search cell showed he was lying.

I also requested my medical evidence and a statement from my doctors to show that when I don't recieve my medications on time, and when I become emotionally upset and distressed and is verbally or physically assaulted and am forced to lie flat these things can exacerbate the symptom of Myasthenia Gravis and at which times of these events it is highly dangerous to put any types of fluids in my mouth, I even gave the names of my doctors Professor John Howard and Dr. Traub both of UNC Medical Center and Hospitals. I also wrote a statement trying to explain my medical condition and the things that Defendant Wilson did to exacerbate the symptom most of which was corroborated by Defendant Wilson own statements, Wilson was also allowed to change his statement to exculpate him.

I also requested, that the nurse who was present during the alleged spitting to write a statement as well as to have reviewed the policies the handling of segregated inmates, use of force and any documents that showed that I didn't get my meds.

On or about 7-21-17, I recieved insufficient Notice of the charges against me, the Notice stated, that on 4-28-17, at approximately 11:20 am Offender Marlon Goodwin, was transported by Officers Wilson and Tigert to UNC for a medical trip. Officer Wilson and Offender Goodwin was involved in an incident which resulted in Offender Goodwin being charged with a A-09, B-18 and C-03 Rule violations.

The Notice was unclear and did not contain the nature of the allegations the particulars of the alleged mis-behavior and or any description of the specific acts upon which the charges were based as to where I could not prepare a defense, and had to rely largely on my memory in gathering evidence and preparing my defense.

On 8-02-17 I recieved a disciplinary hearing before defendant Benjamin. Defendant Benjamin failed and refused to call Defendant Tigert who had been transferred to another prison which was five minutes away, failed to review prison policy and procedures on use of force and handling segregated inmates all of which Defendant Wilson's own statement showed that he had violated, and admitted as much.

Defendant Benjamin also stated that even though I requested the video footage it wouldn't be worth nothing because the incident took place inside the cell and that the video footage from medical also could not be reviewed, I tried to point out that prior to Wilson entering the cell he requested my shoes and the video footage would show that outside the cell Defendant Wilson had my shoes in his hand this would have shown

that if he was lying about the refusal by me to give him my shoe he was lying about the other allegations that were made, and that with the unprofessional misconduct by him showed that I was innocent.

Defendant Benjamin then stated even if Defendant Wilson violated prison policy and procedure and engaged in misconduct she would still believe him over any inmate, because he's a officer and when one of my "officers" says that an inmate did something he did it, I had to use only my memory to refute the charges.

Defendant Benjamin then stated that she did not need any video footage, medical record or statements from my doctor, because her Officers' statements and reports gave a full picture of the incident, and told me to get out.

After the hearing, I recieved a written Deposition signed by defendant Benjamin stating "Based on the reporting party's statement and the investigating officers' Report offender Goodwin is found guilty of the A-09, B-18, and c-03". I was thereafter sentenced to 30 day in segregation which had expired because I had been in segegation since April of 2017 and remained the until september of 2017, I also lost the chance for a promotion in custody and better housing.

The staff statements provided to me did not show that I committed the spitting on Defendant Wilson other then Wilson's statement saying that I spit on him and Sgt. Monroe initial statement the merely said I had attempted to spit and he later switched it from saying I attempted to spit on staff to saying that I actually spit on Defendant Wilson several times, Defendant Tigert who was present throughout the events never mentioned that I had spit on Defendant Wilson, Lt. Shield who was also in medical and witnessed the events also never mentioned that I spit on Defendant Wilson, Defendant Benjamin discriminated against me due to behavior caused by my disability and I tried to explain to Defendant Benjamin that my medical conditions which was exacerbated solely by the actions of Defendant Wilson was the reason any blood/spit whatsoever came out my mouth because if I swallowed it I stood the chance of dying. Defendant Benjamin Just laughed and told me to think of a better excuse, because that one was not gonna fly, as a result I was found guilty and had to stay in Seg.

Pursuant to prison procedure, I filed an administrative appeal with defendant Lassiter pointing out that none of my witnesses (Dr. Howard & Traub or the Nurse) had been collected, the video footage was neither collected and or reviewed, that the Notice was insufficient to apprise me of the charges, that my medical condition was not considered, and that staff failed to give me a timely hearing on the issues, that the defendant Benjamin Case 3:18-cv-03009-RAL Document 1 Filed 04/26/18 Page 34 policy, and the

Written disposition did not explain the reasons for the finding of guilt. I also pointed out that these lower level staff member had all violated prison policies by not reporting Defendant Wilson's misconduct in their reports and that this was a coordinated cover up, as well as based on the actions and statements of Defendant Benjamin that they showed she was far from neutral and unbiased.

Defendant Lassiter denied my appeal. Defendant Watson, Lassiter and Solomon have all been placed on notice of the inability of staff to report the misconduct of other staff members in their reports especially when the misconduct injures and affects an inmate at the Maury Correctional facility and or anyother Correctional facilities that they have previously and or are currently overseeing, their notices has arisen out of and from the number of complaints, grievances and incident reports on the use of force which fail to mention whether or whether not proper procedure was followed these reports also extend to inmate misconduct reports, despite this the defendants have failed to take disciplinary action based on the failure to report misconduct or otherwise implement policies to curtail and control this type of behavior by staff.

Defendant Lassiter has also been put on Notice of the inability and biasness of Defendant Benjamin as well as the other Disciplinary Officers; to review video footage when inmates request it, and their failures to report staff misconduct when it appears in the disciplinary package or arises out of a disciplinary hearing proceeding at which evidence is produced showing such misconduct, Defendant Lassiter has known of this through the many complaints, administrative appeals and grievance alleging biasness and staff misconduct, but has yet to take any disciplinary actions against them or any other action to correct and curtail this kind of behavior from these decision makers, and to not discriminate against inmates with disabilities.

While in Segregation I had to experience excessive noise, I was caged into a small cell and most time I missed recreational times, the room stinked, mental health inmate constantly kicked and banged on their cell doors; as to where I couldn't get the required sleep to recharge and regain the energy that was taken by the Myasthenia Gravis, insects were everywhere, inmates set fires that made it hard for me to breeth since I already had breething difficulties as a result these thing would cause me to be weak. While in restrictive housing and after the assault I had to shower si

to the contrary, someday I was to weak to get my meds from all the noise and the Myasthenia flared oneday while locked in my cell when Defendant Wilson suddenly appeared at my cell door and stated "you bitch motherfucker I'm going to get you and nobody can save you not even PREA".

In september of 2017 I was finally released from Restrictive Housing and sent to upper red unit which is a gang unit, and known as the worst gang unit in the prison system of North Carolina.

When I arrived on this unit I immediately noticed that there were no handicap accomodations for me no shower chair and handheld shower head, the cell was filthy and there was wax on the floors everywhere I thereafter made numerous ADA requests for a shower chair, hand held shower an orderly to help me bathe, clean my cell, a note writer, to help me write letters and court documents so that I could access the courts and litigate the matters that had been occuring since 2015, an alarm clock so that I could arise on time and not miss important medications, meals, and services and for the removal of all the wax off the floors and a audiobook or podcast radio so that I could listen to special radio broadcast and hear books being that I had double vision, and weakened throat and neck muscles and by me having blurry double vision and the weakened neck muscles it would be highly impossible for me to watch the T.V. in the dorm which sat over 14 feet high as well as read with blurred double vision because I would skip the lines that I could barely see. I also requested low heel shoes to help me walk on wax.

Defendants Coley and T. Jones denied all of my requests by stating that I would have to put in a sick call, I even showed Defendant Coley a care package for people with Myasthenia Gravis and it specifically stated that I or people with Myasthenia could not climb stairs, had double vision, could not walk on waxed floors and risked the chances of falling, needed a shower chair and handheld shower head so that they would not slip and fall in the shower because the steam from the shower could exacerbate the symptoms of Myasthenia Gravis, and that people with Myasthenia Gravis would need to where low heeled slip resistant shoes to help prevent the risks of falling, I only have access to services at my own risk of indury.

As a result of these denials I could not listen to any programs of the thing I enjoyed I could not write my family or access the courts, I had to continue sitting on the

shower's floor where people's waste, germs, funguses and bacteria lied. My cell became filthy again and I missed important medication and meal times and at such time when I could make it to medical and meal services I risked the chances of slipping and falling without the medical shoes or special low heeled shoes or prism lenses, this caused an increase in weakness and hunger pangs as to which it cause more present and future suffering because I wasn't get the required amount of medications to slow the Myasthenia Gravis and nutrition to help with my strength.

In October of 2017 I put in a sick call so that I could recieve ADA Accomodation but the medical staff never addressed this issue.

Prison Staff were investigating Defendant Wilson for the sexual abuse of me but they failed to collect any physical evidence they destroyed the crime scene by cleaning up the area of where the assault had occured, the failed to seize or collect defendant Wilson's underwear to check for evidence of arousal despite me telling prison staff that defendant Wilson was aroused, nor did they have the training to carryout such criminal investigations, Defendant Watson knew of this cover up he even ordered for the area where the assault had taken place to be immediately cleaned, Defendants Lassiter and Watson both knew from the many grievances and complaints of sexual assaults and physical abuse that had occured often and over many months were hard to prove without any physical evidence but yet failed to take any actions to promptly start these investigations so that physical evidence isn't destroyed nor did they draft any policies on the immediate collection and preservation of physical evidence in physical and sexual abuse matters.

Defendant Lassiter's failure to implement such policies decreased the chances of prison staffs convictions in a criminal court of law as well minimized the civil liability of the Department of Adult Correction on such matters defendant Watson knew this as well.

Defendants Lassiter and Watson also knew of a loophole in the prison policy which allowed for Prison Staff who were accused of violent offenses against inmate and who were under investigations for such offenses that staff member was given the option to resign

and later rehired after the D.A.C disposed of the investigation against that particular staff member. Defendant Lassiter and Watson also had a policy of block and preventing an inmate from pursuing criminal charges against staff member who used force without clarification against inmates Defendant Watson verbally told inmates and or me that I would not be allowed to immediately pursue charges against defendant Wilson and during this time he instructed his subordinates to clean up the area of where the assault had taken place without first allowing criminal investigators in to examine this area nor were such criminal investigators notified when prison staff had just broken prison policy and the law by using sexually and or physically abusive conduct on a inmate. It was by the acts of the defendants that defendant Wilson has yet to be punished criminally.

In November of 2017 I was transferred to Lanesboro Correctional Facility Once at Lanesboro I immediately submitted numerous ADA requests for accomodations concerning an orderly, note writer, alarm clock, modification to the facilities medical, meals, recreational, educational and religous services, I also submitted requests for assistance in accessing the courts due to my double vision, the inability to write much of anything because I cant properly hold a ink pen, see strait and my speech is slurred and I cannot adhere to a set schedule of the prison or Courts, I requested the aid of a person trained in the law to assist me in attack my criminal conviction and to pursue civil claims against health care providers, prison staff and outside the prison health care providers who either violated my rights or were negligent. I also wanted to attend school to get my GED and do something constructive. Dr. Traub even ordered for me to have a orderly, shower chair.

Defendants Bennette and John Doe either denied my requests, ignored them and or misplaced them I also followed these requests up with grievances which these defendants also denied

As a result of not having these accomodations I have been unable to access the court to challenge my criminal conviction as to where I'm stuck in prison for a crime I did not commit, I cannot be compensated for the medical maltreatment, physical and sexual abuse, the violations of my civil rights by Prison Staff and or defendants, nor can I file injunctions to get the proper accomodations

and to undo the disciplinary sanctions and punishments levied against me by defendant Benjamin and or pursue criminal charges against defendant Wilson, I've missed important medical and meal times as to where I'm very weak daily and suffer from hunger pangs, I have no assistance with bathing or my daily chores to the point that I have to still sit on the shower floor while bathing and while I was cleaning my cell, My blurred double vision had flared up, and I didn't have my special shoes I slipped and fell and broke my finger this happened because I lacked my Prism lenses, the Aid of a orderly and my special shoes, and as a result of my disabilities I was unable to participate in program, activities and services such as medical, religous, meals, educational, cleaning and recreational services and I have no one to assist me with court access, reading and writing tasks that are required to be down in conjunction with most Programs, services and activities that are offered by the DAC. As a result most days I sit around or lay around doing nothing but wasting away in prison, and the only way that I have access to programs, services and activities is at my own risks of being injured its either being injured or going without that is what the defendants have left me with per their decisions, actions and policies.

Defendants Coley, T. Jones, Bennette, John Doe and Chief ADA Coordinator Doe have all been placed on Notice of the need for Special accomodation for my rare medical condition and the mandatory needs I require by the number of ADA Requests, grievances and review of my medical records over many months that I have asked them to do and provide me with but has failed to take any actions to accomodate my disability and to end the discrimination against me or my disability, as a result All Programs, services, activities and my safety ensurement are unavailable to me and when I do try to access them I face the great chance of being injured.

In July of 2017 I was taken to see Dr. Traub a Neuro-Opthalmologist at UNC Hospitals She had to increase the dosages of my medications due to a flare up of the Myasthenia Gravis that was long standing and had yet to subside, DR. Traub wrote in an order that was sent back to Maury Correctional, that I would need Prism Corrective lenses for my constant double vision which was also blurry.

In October of 2017, a Prison Optometrist fitted me for a pair of lenses which were not Prism lenses when I asked about the Prism lenses he said that I would have to make do with the lenses he was

making for me then, and to be thankful for them. It takes a specialist to make Prism lenses

Since then, I have submitted repeated sick call, medical requests and grievances both at Maury and the Lanesboro Correctional Facilities, requesting to be fitted for Prism lenses and over the long delay.

On information and beliefs, when a prisoner files a grievance, the grievance staff calls the matter to the attention of those individuals responsible for the matter that the grievance concerns, at Maury Correctional Facility, Defendant Casino is responsible for medical care generally and for arranging for specialized medical care outside the prison, Defendant Bennette is responsible for the provision of Medical care at Lanesboro Correctional Facility and or is responsible for medical care generally and for arranging for specialized medical outside that facility.

Defendants have denied my grievances and requests for Prism lenses at both facilities, and after approximately eight months I have yet to get my Prism lenses and or to be taken to the specialist to be fitted for Prism lenses, when I need this accomodation to have access to Prison Program and services and so that I can see.

I have constant blurred double vision, headaches and I cannot walk strait, I bump into objects and other inmates which causes indures or fights, I cant walk to meal services, medical services or anywhere else for that matter without facing the risk of indury nor can I watch T.V. or read books, court cases, document, letters from family and friends, I also fell in my room and broke my finger, and I have yet to get care for it. On information and belief, if I am promptly provided with Prism lenses the chance of permanent disability is gone which is exactly what Dr. Traub ordered, but if not I risk permanent disability, and to my finger too.

On or about March 13, 2018 while I was cleaning my cell and under the disability and visual impairment of blurred double vision I tripped in my cell and fell breaking my pinky a few days later I was seen by nurse Doe who only prescribed me non-asprin although she saw that I was in great pain and in need of a doctor's advice, Nurse Doe failed to place my finger in a splint although she observed that it was swollen and crooked nor did she send me outside the prison for urgent treatment. or get X-Rays its now April of 2018 and I have yet to get my finger set strait and it has now healed with a crook in it as to where it hurts when I move it and doesnt move properly. It wasnt until 4-19-18 that I got a X-Ray.

Defendant Bennett and Nurse Doe failed to get me prompt medical services outside the prison.

On or about 3-20-18 I was taken to see Nurse Doe and given an X-Ray a month later, and nothing more. I can barely hold objects or thing in my right hand due to weakness and the broke finger.

Defendant Bennette knew of my injury and the delay through my grievances on this issue but has yet to take any actions in send me to a specialist outside of the prison.

Prison Health Services and or Chief Medical Officer Doe 1 knew of the policies of long delay in providing specialist care outside the prisons in the state of North Carolina by a number of complaints and grievances over many months but has failed to any corrective actions to fix this defect in the policy to ensure that inmates and or the Plaintiff is provided Prompt Access to Outside Care, as well as that prison medical staff provided inmates with the necessary accomodations, in a timely manner.

## VI. ADMINISTRATIVE PROCEDURES

*WARNING: Prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). Your case may be dismissed if you have not exhausted your administrative remedies.*

Have you filed a grievance concerning the facts relating to this complaint? ☑ Yes ☐ No

    If no, explain why not:

_____

_____

_____

_____

_____

Is the grievance process completed? ☑ Yes ☐ No

    If no, explain why not:

_____

_____

_____

_____

## VII. RELIEF

*State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.*

Defendants PHS, or CMO Doe; C. Taylor; Casino; Bennette and Nurse Doe, Jones, failed to Provide me Continous Adequate care. Issue declaratory Judgments stating that the sexual and physical abuse of the plaintiffs by defendants Wilson, Watson, Tigert, and Lassiter violated the 8th Amendment and constituted Assault and battery. And Defendants Benjamin and Lassiter in conducting the disciplinary process violated Plaintiffs' Due Process. ² PDA Defendants PHS, CMO Doe, Coley, T. Jones, Casino, Bennette, Tigert, Watson, A.D.A Coordinator Doe of the Laneshoro Facility; chief. ADA Coordinator Doe have discriminated against me and or my disabilities violating the ADA. Defendants Lassiter & Benjamin have also violated the ADA. Issue injunctions for the expungment of the disciplinary infraction described in the Complaint, Order the defendants to Provide me with my ADA Requests, orderly, court access, special shoes, shower Chair, special housing for my medical needs, medically unfit gain Times, Audio book, Pod Cast radio, and order Defendants Bennette to get me to a specialist so that I can get my finger fixed and Prism lenses and award me Compensatory damages of $250,000 Jointly and severally against all defendants and punitive damages of $100,000 Jointly and severally against all defendants. Appoint Counsel to assist me in future proceedings

Page 8 of 10

## VIII. PRISONER'S LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in forma pauperis in federal court if that prisoner has "on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).*

Have you brought any other lawsuits in state or federal court while a prisoner?    ☑ Yes    ☐ No

If yes, how many?  *One*

Number each different lawsuit below and include the following:

- Name of case (including defendants' names), court, and docket number
- Nature of claim made
- How did it end? (For example, if it was dismissed, appealed, or is still pending, explain below.)

Dismissed W/o Prejudice for Failure to exhaust Goodwin vs Barnes 1:10 cv 151 U.S.D.C MDNC

## IX. PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

***Each Plaintiff must sign and date the complaint and provide prison identification number and prison address.***

4-22-18
Dated

Plaintiff's Signature

Marlon Goodwin
Printed Name

0575452
Prison Identification #

P.O. Box 280     Polkton     N.C.     28135
Prison Address     City     State     Zip Code